IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION

SONIA M. SMITH                                                                                PLAINTIFF

v.                                          NO. 4:08CV00510 HDY

MICHAEL J. ASTRUE,                                                                         DEFENDANT
Commissioner of the Social
Security Administration

MEMORANDUM OPINION AND ORDER

BACKGROUND. The record reflects that in September of 2004, plaintiff Sonia M. Smith ("Smith") filed applications for disability insurance benefits and supplemental security income benefits pursuant to the provisions of the Social Security Act ("Act"). Her applications were denied initially and upon reconsideration. She next requested, and received, a de novo administrative hearing before an Administrative Law Judge ("ALJ"). In July of 2006, the ALJ issued a decision adverse to Smith. She appealed the adverse decision to the Appeals Council. The adverse decision was affirmed by the Appeals Council and became the final decision of the Commissioner of the Social Security Administration ("Commissioner"). In June of 2008, Smith commenced the proceeding at bar by filing a complaint pursuant to 42 U.S.C. 405(g). In her complaint, she challenged the final decision of the Commissioner.

STANDARD OF REVIEW. The sole inquiry for the Court is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. See Prosch v. Apfel, 201 F.3d 1010 (8th Cir. 2000). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusions." See Id. at 1012.

THE COMMISSIONER'S FINDINGS. The Commissioner made findings pursuant to the five step sequential evaluation process. At step one, the Commissioner found that Smith has not engaged in substantial gainful activity "at any time relevant to [the] decision." See Transcript at 13. At step two, the Commissioner found that Smith has the following severe impairments: syncope of undetermined etiology, back pain, and a history of hepatitis B. At step three, the Commissioner found that Smith does not have an impairment or combination of impairments listed in, or medically equal to one listed in, the governing regulations. The Commissioner then assessed Smith's residual functional capacity and found that she is capable of performing a wide range of light work. In so finding, the Commissioner found the following with specific regard to Smith's syncope:

> [Smith] bases her disability on unexplained fainting spells. She first sought help for them in February 2004. Extensive testing was obtained by Abdul Ezeldin, M.D. and her family doctor, Kirk Riley, M.D. Dr. Ezeldin believed there might be a neurocardiogenic component to her syncope but this was ruled out by an echocardiogram, multiple tilt studies, a Holter monitor, an EEG, and exercise stress tests … [Smith] was tried on beta blockers to no avail. She is no longer on medication for her syncope and the most recent medical evidence is dated October 2004.

<u>See</u> Transcript at 14.  In the context of addressing Smith's complaints of pain, the Commissioner additionally found the following with specific regard to her syncope:

> In this case, the medical evidence fails to establish a medically determinable cause for her fainting spells.  She testified that she wears a helmet on some days and has fallen.  However, no medical personnel have observed [the] spells.  Moreover, no physician has advised her to stop working.

<u>See</u> Transcript at 15.  The Commissioner then proceeded to step four.  At that step, the Commissioner found that Smith is unable to perform any of her past relevant work.  At step five, the Commissioner found that, considering Smith's residual functional capacity, age, education, and work experience in conjunction with the testimony of a vocational expert, there are other jobs that exist in significant numbers in the national economy that she can perform.  Given that finding, the Commissioner concluded that Smith is not disabled within the meaning of the Act.

<u>SMITH'S LONE ASSERTION</u>.  Are the Commissioner's findings supported by substantial evidence on the record as a whole?  Smith thinks not and advances a single reason why.  She maintains that the Commissioner failed to fully develop the record because evidence of her mental impairment was not adequately developed and evaluated under the "special technique."  <u>See</u> Document 9 at 7.[1]

---

[1] The Court understands the "special technique" to be the psychiatric review technique codified at 20 C.F.R. 404.1520a(a).

MENTAL IMPAIRMENT. At the outset, the Court confesses considerable difficulty in properly identifying the impairment at issue. In the argument portion of Smith's brief, she maintains that the Commissioner failed to fully develop the record because evidence of her mental impairment was not adequately developed and evaluated under the "special technique." In the summary of impairments portion of her brief, though, she maintains the following:

> [Smith's] disabling condition consists of syncope of unknown etiology. Although reference is made in some of the earlier decisions to hepatitis B, [she] makes no claim that that condition impairs her ability to work in any fashion and has specifically so stated. ....
>
> [Smith's] disabling claim consisted of an unpredictable syncope in which she momentarily passes out without any forewarning. ...

See Document 9 at 6.

The Court understands syncope to be a temporary partial or complete loss of consciousness, in common parlance, fainting. See www.medterms.com. It appears to be typically caused by a temporary reduction in blood pressure, a situation that can arise from any number of problems. Syncope does not appear to be a mental impairment as a mental impairment is generally characterized by the display of an intellectual defect as manifested by diminished cognitive, interpersonal, social, or vocational effectiveness. It instead appears that syncope is more of a physical impairment. For that reason, the Court has some doubt that the mental impairment alleged by Smith is her syncope.

What, then, is Smith's mental impairment? Although it is not clear, her mental impairment appears to be the stress, depression, and/or panic attacks she experienced in the fall of 2003.

Having found the foregoing, the Court begins an analysis of Smith's lone assertion by noting that the Commissioner has an obligation to fully and fairly develop the record. See Battles v. Shalala, 36 F.3d 43 (8th Cir. 1994). The obligation exists even if the claimant is represented by counsel at the administrative hearing. See Boyd v. Sullivan, 960 F.2d 733 (8th Cir. 1992). There is no bright line test for determining whether the Commissioner has fully and fairly developed the record; that determination is made on a case-by-case basis. See Battles v. Shalala, 36 F.3d at 45. It should be noted, however, that the Commissioner is not obligated to "investigate a claim not presented at the time of the application for benefits and not offered at the hearing as a basis for disability." See Pena v. Chater, 76 F.3d 906, 909 (8th Cir. 1996).

The record reflects that at successive visits to a physician in the fall of 2003, Smith was diagnosed with "adult stress with depression" and a "possible panic-like disorder." See Transcript at 205, 207. She was prescribed medication and instructed to return for a follow-up examination. At the follow-up examination, no mention was made of stress, depression, and/or panic attacks. See Transcript at 203. In fact, the record apparently contains no other mention of stress, depression, and/or panic attacks; she has certainly not cited the Court to any such mention.

In filing the applications at bar, Smith was required to complete a number of documents. In the documents, she apparently made only one mention of stress, depression, and/or panic attacks, that being, a mention of depression in a document she completed in March of 2005. See Transcript at 53. It is not clear whether the depression was alleged to have been a separate impairment or was simply one of the consequences flowing from her syncope.[2]

Smith testified at the subsequent administrative hearing. See Transcript at 295-302. The only mention of depression made during the hearing was the following exchange between the ALJ and Smith:

> Q. Ms. Smith, those medications-Toprol is a beta blocker. Zoloft is frequently prescribed for depression, so are you taking those for anxiety and depression?
>
> A. No. Dr. Ezeldon …, the cardiologist, put me on those. When it first stated he thought it might be something with my heart, my blood pressure.
>
> Q. Oh, okay. Thought maybe you had an irregular heartbeat or something?
>
> A. Yes.

See Transcript at 301.

---

[2] The more likely construction is probably the latter-the depression was one of the consequences flowing from Smith's syncope-as she noted in the same document that her life had come to a halt because of her fainting spells. See Transcript at 58.

In the decision that followed, the Commissioner made no mention of stress, depression, and/or panic attacks. See Transcript at 11-17. Was that reversible error? For the following reasons, the Court thinks not.

First, Smith did not adequately raise stress, depression, and/or panic attacks as a basis for disability in her applications. Although they contain a reference to depression, the reference stands alone and is not supported by any other assertion.

Second, Smith did not adequately raise stress, depression, and/or panic attacks as a basis for disability at the administrative hearing. Although depression was certainly mentioned during the hearing, it was not mentioned as a separate impairment but was instead mentioned in the context of the medication she took for her syncope.

Last, any error on the part of the Commissioner in failing to develop the record with regard to stress, depression, and/or panic attacks was harmless error. The diagnosis of "adult stress with depression" and a "possible panic-like disorder" occurred in September and October of 2003, three months before the alleged date onset date. The medical evidence supporting the diagnosis is scant. Although medication was prescribed, there is nothing to indicate that Smith took the medication for any period of time; in fact, she testified during the administrative hearing that she was taking no medication for anxiety or depression. At a follow-up examination, no mentioned was made of stress, depression, and/or panic attacks. The record apparently contains no other mention of them, and she has certainly not cited the Court to any such mention.

Accordingly, the Court finds that the Commissioner did not commit reversible error in failing to develop the record with regard to stress, depression, and/or panic attacks. The Commissioner cannot be faulted for failing to develop and evaluate her mental impairment under the "special technique" because Smith had no discernable mental impairment.

SYNCOPE. Because it is possible to construe Smith's pleadings in such a manner that her true complaint is the Commissioner's treatment of her syncope, the Court will address that impairment out of an abundance of caution. The Commissioner found that Smith's syncope is of an undetermined etiology and is a severe impairment. The Commissioner found, however, that the syncope does not preclude her from performing a wide range of light work and that there are other jobs that exist in significant numbers in the national economy that she can perform.

The evidence is unrebutted that Smith experiences syncope, or fainting spells. The frequency of the spells is erratic–sometimes they occur three or four times a week, sometimes they occur ten times a day. See Transcript at 300. It may be true that no medical personnel have ever observed the spells, but that fact is irrelevant. The medical evidence does not contradict the existence of the spells; the medical evidence instead indicates that the spells are of an unknown origin. It may be true that she presently takes no medication for the spells, but her previous attempts to control the spells with medication have been unsuccessful.

The Court is not convinced that the Commissioner fully incorporated the true extent of Smith's syncope into the assessment of her residual functional capacity. Although the Commissioner's assessment of her residual functional capacity included the finding that she "avoid exposure to unprotected heights and dangerous machinery," see Transcript at 14, which the Court understands to be a reference to her syncope, the record indicates that her syncope causes far greater restrictions. The record is replete with references to her passing out and hitting her head, even while attempting to visit the bathroom, and it is apparently for that reason that she sometimes wears a helmet.

The Court is also not convinced that the Commissioner fully incorporated the true extent of Smith's syncope into the initial hypothetical questions to the vocational expert. In those question, the Commissioner asked the vocational expert to assume an individual who needs, inter alia, to "avoid hazards such as heights, vibrations, dangerous machinery including driving any kind of equipment or an automobile." See Transcript at 306. It is possible to interpret that portion of the hypothetical questions as including Smith's syncope. That interpretation is unlikely, though, because the Commissioner subsequently asked the vocational expert to assume an individual who is given to, inter alia, "unexpected episodes of unconsciousness posing a danger to herself or others." See Transcript at 307. With regard to that question, the vocational expert testified that there is no work that a person with that limitation can perform. As the vocational expert's answer reveals, the true extent of Smith's syncope is a critical factor.

CONCLUSION. The Court is not convinced that the Commissioner fully developed the record with regard to Smith's syncope. Specifically, the Court is not convinced that the Commissioner fully incorporated the true extent of her syncope into the assessment of her residual functional capacity or that the Commissioner fully incorporated the true extent of her syncope into the initial hypothetical questions to the vocational expert. A remand is therefore warranted. Upon remand, the Commissioner shall ascertain the true extent of Smith's syncope and incorporate that finding into the assessment of her residual functional capacity. The Commissioner shall ask the vocational expert one or more hypothetical questions based upon that assessment of her residual functional capacity.

Accordingly, the Commissioner's final decision is reversed, and this case is remanded for additional proceedings. This remand is a "sentence four" remand as that phrase is defined in 42 U.S.C. 405(g) and Melkonyan v. Sullivan, 501 U.S. 89 (1991).

IT IS SO ORDERED this ___9___ day of June, 2009.

_____
UNITED STATES MAGISTRATE JUDGE